UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:13-cv-175-FDW

| ROBERT S. BALLARD, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NC DEPARTMENT OF | ) | **ORDER** |
| PUBLIC SAFETY, | ) | |
| MARTA M. KALINSKI, Doctor, | ) | |
| PAULA SMITH, Doctor, Director of | ) | |
| Health Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A, (Doc. No. 1), on Plaintiff's Motion to Appoint Counsel, (Doc. No. 4), on Plaintiff's Motion for Ruling on Preliminary Injunction, (Doc. No. 12), and on Plaintiff's Motion for a Physical Examination, (Doc. No. 13). This Court has granted Plaintiff the right to proceed in forma pauperis. (Doc. No. 8).

**I.     BACKGROUND**

Pro se Plaintiff Robert S. Ballard is an inmate of the State of North Carolina, currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. Plaintiff filed this action on December 26, 2013, pursuant to 42 U.S.C. § 1983, naming as Defendants the North Carolina Department of Public Safety; Dr. Marta M. Kalinski, identified as a medical doctor with Alexander Correctional Institution in Taylorsville, North Carolina; and Dr. Paula Smith, identified as Director of Health Services for the North Carolina Department of Public Safety. (Doc. No. 1 at 3). Plaintiff purports to bring a claim against Defendants for deliberate

1

indifference to serious medical needs. (Id. at 5). Specifically, Plaintiff alleges that in late spring or early summer of 2013, while Plaintiff was incarcerated at Alexander Correctional Facility, Defendant Dr. Kalinski took Plaintiff off of his pain medications that are vital to his well-being. Plaintiff alleges that Dr. Kalinski took him off of the pain medication because of an inaccurate report submitted to the doctor. Plaintiff alleges that Dr. Kalinski had no cause to take away his pain medication.

Plaintiff alleges that he initially hurt his back "while working on the streets fell approximately 28 feet when the ladder broke in 2004." (Id. at 3). Plaintiff was receiving treatment for the fall from 2004 until he was incarcerated in 2010. Plaintiff received an MRI while at Central Prison in Raleigh, North Carolina. (Id. at 3-4). The MRI showed damage to multiple vertebrae, and a doctor at Central Prison prescribed pain medication for Plaintiff. Plaintiff was transferred to Alexander Correctional Facility in June 2012, where he was treated by Dr. Jones, the resident doctor at that time. (Id. at 4). Dr. Jones continued Plaintiff on his pain medications as was prescribed from his time at Central Prison. Dr. Jones left Alexander Correctional Facility in early 2013, and Dr. Kalinski was subsequently appointed resident doctor of Alexander Correctional Facility. See (Doc. No. 11-1 at 2). Plaintiff alleges that he first asked Dr. Kalinski to increase his dosage at night because he was not able to get a full night's sleep due to his back pain. (Doc. No. 1 at 4). Dr. Kalinski scheduled Plaintiff to receive an extra dose of medication before bed so that he could sleep all night.

Plaintiff alleges that he was denied his medication by the nurse on duty. Plaintiff then filed a report with the officers on duty and he was subsequently put back on his medication. Plaintiff alleges that Dr. Kalinski subsequently did not renew the late night dosage that he was supposed to receive, and he therefore started having trouble sleeping again. When Plaintiff went

2

to see Dr. Kalinski in an attempt to be put back on the late night dosage she told him, "I'm not giving you anymore pain meds." (Id. at 4). Plaintiff then requested his medical records from a clinic that had treated him before his incarceration. The records showed that Plaintiff was treated and dismissed from the clinic because the clinic was under the impression that Plaintiff was going to three different clinics and receiving pain medication from all three clinics. Upon receiving the clinic's medical records, Dr. Kalinski took Plaintiff off of his medication entirely. Plaintiff disputed the report from the clinic and he alleges that the report was incorrect. Plaintiff then requested to be sent to a neurologist, but Dr. Kalinski would not allow it. Plaintiff then wrote a letter to Dr. Paula Smith, the head of Health Services for the Department of Public Safety, with regard to being taken off of his pain medication and not being allowed to see a neurologist. (Id. at 5). Plaintiff never received a response.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

## III. DISCUSSION

A. Plaintiff's Claim for Deliberate Indifference to Serious Medical Needs

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to

4

medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

The Court finds that, assuming that Plaintiff's allegations are true, and drawing all reasonable inferences in his favor, Plaintiff has sufficiently stated a claim against Defendant Dr. Kalinski for deliberate indifference to serious medical needs. See Adams v. Southwest Va. Reg'l Jail Auth., 524 Fed. App'x 899, 901 (4th Cir. 2013) (reversing dismissal by the district court, stating that "[Plaintiff] alleged that [Defendant] . . . removed him from the vast majority of his pain medication without examining him after he complained, and told him that he did not need to be able to walk or stand. We find that these allegations . . . state a potentially cognizable claim for deliberate indifference to medical needs."). Therefore, this action survives initial review as to Dr. Kalinski.

Defendants North Carolina Department of Public Safety and Paula Smith, however, will be dismissed from this action. First, as to Defendant North Carolina Department of Public Safety, Section 1983 applies only to "persons" acting under color of state law. By suing the North Carolina Department of Public Safety, Plaintiff has effectively sued the State of North Carolina. However, neither the State nor its agencies constitute "persons" subject to suit under Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North

5

Carolina and its various agencies.  See Ballenger v. Owens, 352 F.3d 842, 844 (4th Cir. 2003).

Next, Plaintiff's allegations as to Susan White—that he sent her a letter complaining about his treatment and that he received no response—do not rise to the level of an Eighth Amendment violation.  Furthermore, it is well-settled that Defendant White cannot be held liable merely by virtue of her position based on respondeat superior.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply).

B.  Plaintiff's Remaining Motions

First, as to Plaintiff's motion to appoint counsel, Plaintiff alleges that he is incarcerated in punitive segregation with no ability to investigate or engage in discovery of his claims, that he has limited knowledge of the law, and that the issues are complex.  There is no absolute right to the appointment of counsel in civil actions such as this one.  Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel.  Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987).  Notwithstanding Plaintiff's contentions to the contrary, Plaintiff has not shown exceptional circumstances justifying appointment of counsel at this time.  Therefore, Plaintiff's motion to appoint counsel will be denied.

Next, as to Plaintiff's Motion for Preliminary Injunction and his Motion for a Physical Examination, the Court will deny both motions.  Plaintiff has failed to show all four factors necessary for the Court to grant a preliminary injunction—most importantly, he has not shown that his claim is likely to succeed on the merits.  See Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008).  Furthermore, Plaintiff has not met his burden of showing that a physical examination is necessary at this time.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff has alleged a claim for deliberate indifference to serious needs sufficient to survive this Court's initial review as to Defendant Dr. Kalinski. The Court dismisses, however, Defendants North Carolina Department of Public Safety and Susan White from this action.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint survives initial review under 28 U.S.C. § 1915(e) as to Defendant Kalinski, but the other two Defendants are dismissed.

2. Plaintiff's Motion to Appoint Counsel, (Doc. No. 4), Plaintiff's Motion for Ruling on Preliminary Injunction, (Doc. No. 12), and Plaintiff's Motion for a Physical Examination, (Doc. No. 13), are all **DENIED**.

2. **IT IS FURTHER ORDERED THAT**, the Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and return for service of process on Defendant Kalinski. Once the Court receives the summons form, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendant Kalinski.

Signed: June 28, 2014

Frank D. Whitney
Chief United States District Judge